## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAYDEN WILLIAMS, *per proxima amici* | ) | 3:19-CV-01772 (KAD) |
| CARMEN MORALES | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MESA UNDERWRITERS SPECIALTY | ) | |
| INSURANCE COMPANY, et al., | ) | |
| *Defendants*. | ) | May 8, 2021 |

### MEMORANDUM OF DECISION RE: DEFENDANT MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 20) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)

Kari A. Dooley, United States District Judge

Plaintiff Jayden Williams, *per proxima amici*[1] Carmen Morales, seeks a declaratory judgment finding that Defendant MESA Underwriters Specialty Insurance Company[2] ("MUSIC") is obligated to pay him $250,000 pursuant to a stipulated judgment entered in his favor in a lawsuit for personal injury brought by Plaintiff against MUSIC's insureds Donavan Realty Corporation, LLC ("Donavan Realty") and Kingsley Spencer ("Spencer"), among others, captioned *Jayden Williams, A Minor By and Through His Mother et al. v. Donavan Realty Corporation aka Donavan Realty Corp. et al.*, Docket No. HHD-CV15-6058281-S (Superior Court of Connecticut for the Judicial District of Hartford). Pending before the Court are cross-motions for summary judgment each of which relies, albeit to different conclusions, on the language of the insurance policy issued

---

[1] "Per proxima amici, or ppa, means by or through the next friend, and is employed when an adult brings suit on behalf of a minor, who was unable to maintain an action on his own behalf at common law." *Joshua Marciniszyn v. Laine E. Taylor, D.O. et al.*, No. UWYCV205026268S, 2021 WL 1595435, at *1 n.1 (Conn. Super. Ct. Mar. 19, 2021) (internal quotation marks and citation omitted).

[2] On November 25, 2019, this Court terminated Selective Insurance Group, Inc. as a Defendant in light of Plaintiff's "Motion to Withdraw," which the Court construed as a Rule 41(a)(1)(A)(i) Notice of Voluntary Dismissal. (ECF No. 10).

by MUSIC to Donavan Realty and Spencer. For the following reasons, MUSIC's motion for

summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

**Background and Procedural History**

The following facts are undisputed.[3] MUSIC issued a Commercial Property and

Commercial General Liability policy ("MUSIC Policy" or "policy") to Donavan Realty[4] and

Spencer for an apartment complex located at 1053-1057 Capitol Avenue, Hartford, Connecticut

effective September 19, 2014 through September 19, 2015. In pertinent part, the MUSIC Policy

provides that:

> [MUSIC] will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies. We will have the right and duty to defend the insured against any "suit"
> seeking those damages. However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply.

(ECF No. 22-1 at 30). The MUSIC Policy also includes an animal liability exclusion that

"applies to all liability claims relating to or arising from animals[.]" (*Id*. at 15 (hereinafter,

"animal liability exclusion")).

---

[3] As a preliminary matter, the Court observes that Plaintiff failed to comply with District of Connecticut Local Rule of Civil Procedure 56, which required Plaintiff's response to MUSIC's motion to include "a reproduction of each numbered paragraph in [MUSIC's] Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." D. CONN. L. CIV. R. 56(a)2(i), which Plaintiff did not do. Consequently, "[w]here a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted." *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013); *see also Knight v. Hartford Police Dep't*, No. 3:04-cv-969 (PCD), 2006 WL 1438649, at *4 (D. Conn. May 22, 2006) ("When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted."). Accordingly, to the extent the facts within MUSIC's Local Rule 56(a)1 Statement are adequately supported by evidence within the record, the Court will deem them admitted by Plaintiff. *See* D. CONN. L. CIV. R. 56(a)1. Additionally, in its 56(a)1 Statement, MUSIC references the underlying lawsuit. The Court takes judicial notice of these proceedings as is appropriate. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (The Court "may take judicial notice of [documents] filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))).

[4] The named insured in the MUSIC Policy is identified as "Don*o*van Realty Corp.," though the parties do not dispute that Don*a*van Realty is insured by the policy.

On January 28, 2015, while visiting tenants at the complex, Plaintiff was attacked by a pit bull and suffered injuries. On March 9, 2015, Plaintiff filed the underlying lawsuit against (1) Donavan Realty for negligence; (2) Leonardo Perez (co-owner of the dog) for strict liability and negligence; and (3) Carmen Y. Morales Pagen (co-owner of the dog) for strict liability and negligence.[5] Therein, Plaintiff generally alleged that Donavan Realty was negligent for failing to use reasonable care in keeping the premises safe from dangerous conditions, including the presence of a dangerous dog.

Upon Plaintiff's filing of the underlying lawsuit, Donavan Realty's insurance agent provided MUSIC with notice of the incident along with the summons and complaint. By letter dated March 19, 2015, MUSIC informed Donavan Realty and Spencer that it was denying the claim citing the animal liability exclusion. (ECF No. 22-4 at 5).

Thereafter, Plaintiff filed three amended complaints in the underlying lawsuit. First, on September 22, 2015, Plaintiff sought to amend the complaint to add MUSIC as a party because it denied Donavan Realty's claim. The court denied Plaintiff's request. Then, on September 16, 2016, Plaintiff filed a proposed second amended complaint seeking to add Spencer as a defendant. The court granted Plaintiff's request and the second amended complaint became operative in November 2016. However, neither the insureds nor Plaintiff provided MUSIC with notice of the second amended complaint. Similarly, when Plaintiff filed the third amended complaint in April 2017, neither the insureds nor Plaintiff notified MUSIC. The third amended complaint added factual allegations regarding, *inter alia*, Donavan Realty's policies regarding dogs and its awareness of the dog's presence on the property.

---

[5] Neither Leonardo Perez nor Carmen Y. Morales Pagen are insured under the MUSIC Policy.

Ultimately, the parties resolved the underlying lawsuit by stipulated judgment on September 26, 2018. (ECF No. 17-3 at 26). The $250,000 judgment, entered in favor of Plaintiff, was allocated 96% to Donavan Realty and 4% to Spencer. (*Id*.). Pursuant to the judgment, Donavan Realty assigned its interests in the MUSIC policy to Plaintiff and Plaintiff's counsel agreed to make good faith efforts to collect the judgment from MUSIC. (*Id*.).

Accordingly, on October 21, 2019, Plaintiff brought this action against MUSIC in the Connecticut Superior Court seeking a declaratory judgment and finding that MUSIC is obligated to pay Plaintiff the full amount of the stipulated judgment. On November 11, 2019, MUSIC removed the action to this Court. Thereafter, on August 4, 2020, Plaintiff moved for summary judgment. On September 11, 2020, MUSIC cross-moved for summary judgment. Both motions were fully briefed, and on December 17, 2020, the Court heard oral argument.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. "[T]here is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (citations omitted). In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**Discussion**

As noted above, there is no factual dispute as to the policy language at issue. The dispute is as to the applicability of the policy provisions. And nor is there a factual dispute as to the allegations asserted in the underlying lawsuit. Again, the dispute is as to the implications of those allegations *vis a vis* the policy provisions. MUSIC, therefore, moves for summary judgment as to its Second Affirmative Defense arguing that it had no duty to defend, nor to indemnify, the insureds in the underlying lawsuit because coverage for Plaintiff's claims was excluded by the animal liability exclusion. The animal liability exclusion provides:

**EXCLUSION – ANIMAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE FORM

SECTION I-COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS AND COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS are amended and the following added:

**This exclusion applies to all liability claims relating to or arising from animals**, including the failure to train, supervise, or control animal (s).

All other terms and conditions of this policy remain unchanged.

(ECF No. 22-1 at 15 (emphasis added)). Plaintiff counters that the animal liability exclusion did not apply to the underlying litigation thereby excusing MUSIC's duty to defend the underlying lawsuit, or to indemnify the insureds, because (1) the underlying lawsuit was not a liability claim and/or (2) the underlying lawsuit did not relate to or arise from animals. Therefore, Plaintiff seeks summary judgment pursuant to the general liability coverage under the policy.[6]

**Duty to Defend**

An insurer's duty to defend is broader than its duty to indemnify. *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 398 (2000).[7] "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (emphasis in original; internal quotation marks and citation omitted). "[Connecticut courts construe] broad policy language in favor of imposing a duty to defend on the insurer." *Id*. at 466. "Where the insurer has sufficient knowledge to show that a claim falls within coverage even though not properly pleaded to [invoke] coverage, the carrier cannot make the face of the complaint argument[.]" *Id*. at 467 (internal quotation marks omitted). Instead, an insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id*. (internal quotation marks omitted).

"[T]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of the complaint with the terms of

---

[6] Because both motions turn on the applicability, or not, of the animal liability exclusion, the Court considers Plaintiff's arguments made in opposition to Defendant's motion for summary judgment as well as Plaintiff's arguments made in support of his motion for summary judgment, which were incorporated into Plaintiff's opposition. The Court also considers MUSIC's arguments made in opposition to Plaintiff's motion for summary judgment as well as its arguments made in support of its motion for summary judgment. (ECF No. 23 at 6 n.1 (MUSIC noting that the issues raised in Plaintiff's motion for summary judgment are largely the same as the issues raised by its own motion)).

[7] Because this is a diversity case, the Court will apply Connecticut substantive law. *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) (federal courts sitting in diversity apply the substantive law of the forum state). Both parties advance their arguments under Connecticut law.

the insurance policy." *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 154 (2013) (internal quotation marks, citation, and alterations omitted). "[W]here an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment [or settlement] obtained against the insured up to the limit of liability fixed by its policy." *Hartford Cas. Ins. Co.*, 274 Conn. at 470 (internal quotation marks and citation omitted).

Thus, the question here is whether Plaintiff's underlying lawsuit might have been covered by the MUSIC Policy given the language of the animal liability exclusion.[8] As discussed above, Plaintiff argues that the animal liability exclusion did not apply to the underlying lawsuit because

---

[8] Plaintiff concedes that, in determining whether the underlying lawsuit triggered MUSIC's duty to defend, the Court must only consider the initial complaint because MUSIC was not provided with notice of the subsequent amended complaints by Plaintiff or the insureds. In pertinent part, the initial complaint provides:

> 9. The . . . attack, dog biting and resulting injuries and losses to the minor plaintiff were proximately caused by the carelessness and negligence of the defendant, Donavan Realty Corporation, along with its agents, servants and/or employees, in one or more of the following respects:
>
> > a. In that they failed to use reasonable care to keep in a reasonably safe condition the parts of the premises over which they reserved control;
> >
> > b. In that they failed to keep common areas in reasonably safe condition and to alleviate dangers by known dangerous dogs;
> >
> > c. In that they failed to remove the pit bull or otherwise implement a lease provision prohibiting the defendants from keeping a dangerous dog; to keep the plaintiff safe from dog attacks on the premises; and to warn the plaintiff of the presence of a dangerous dog.
> >
> > d. In that they knew or should have known the dog was dangerous and aggressive to persons lawfully in the common areas of the premises, but failed to take, impose or enforce action or rules to render the situation safe;
> >
> > e. In that they failed to keep the plaintiff or other persons lawfully upon the premises safe from dog attacks;
> >
> > f. In that they failed to remove the dog, which they knew or should have known to have dangerous propensities, from the premises[.]

(ECF No. 22-3 at 4–5).

(1) the underlying lawsuit was not a liability claim and/or (2) the underlying lawsuit did not relate to or arise from animals. For the following reasons, the Court agrees with MUSIC that the underlying lawsuit was clearly excluded from coverage by the animal liability exclusion and that MUSIC's duty to defend was not triggered.

### Liability Claim

The animal liability exclusion provides that it applies to all "liability claims." (ECF No. 22-1 at 15). The parties disagree as to whether the underlying lawsuit qualifies as a "liability claim." Plaintiff principally argues that the underlying lawsuit does not qualify as a liability claim because a suit is not a claim. MUSIC counters that the term "liability claim" includes lawsuits. The Court agrees with MUSIC.

"Under Connecticut law, the interpretation of an insurance policy is a question of law for the court." *Arrowood Surplus Lines Ins. Co. v. Westport Ins. Corp.*, No. 3:08-cv-01393 (AWT), 2010 WL 56108, at *2 (D. Conn. Jan. 5, 2010), *aff'd sub nom. Arrowood Surplus Lines Ins. Co. v. Westport Ins. Co.*, 395 F. App'x 778 (2d Cir. 2010) (citing *Pac. Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 30 (1997)). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy [and] [t]he policy words must be accorded their natural and ordinary meaning[.]" *Aetna Cas. & Sur. Co.*, 240 Conn. at 29–30 (internal quotation marks omitted). Significantly, the Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result[.]" *Arrowood Indem. Co. v. King*, 304 Conn. 179, 187 (2012). Further, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured [but such rule] may not be applied . . . unless the policy terms are indeed

ambiguous [and] the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous[.] " *Aetna Cas. & Sur. Co.*, 240 Conn. at 30. The Court will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]" *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 584 (1990).

Here, the policy does not define the terms "claim" or, more particularly, "liability claim." Thus, the Court first turns to dictionary definitions to define "liability claim." *New London Cty. Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 166 (2013) ("To determine the common, natural, and ordinary meaning of an undefined term [in an insurance policy], it is proper to turn to the definition found in a dictionary."). "Liability" is defined as, *inter alia*, "the quality or state of being liable;" or "something for which one is liable [especially a] pecuniary obligation[.]" *Liability*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009). "Liable" is defined as, *inter alia*, "obligated according to law or equity[.]" *Liable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009). Accordingly, in this context, "liability" is the quality or state of being pecuniarily obligated according to law or equity. In the insurance context, a "claim" is defined as "a demand for something due or believed to be due[.]" *Claim*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009). Combining these definitions,[9] a "liability claim" is a demand for something due, or believed to be due, based on another's pecuniary obligation according to law or equity.[10] In simpler terms, a "liability claim" is a demand for money due under the law. Such is

---

[9] The Court notes that the policy was issued by MUSIC in 2014, however, it does not appear that the definitions of "liability," "liable," or "claim" have changed since 2009. *See Liability*, Merriam-Webster, https://unabridged.merriam-webster.com/collegiate/liability (last visited May 6, 2021); *Liable*, Merriam-Webster, https://unabridged.merriam-webster.com/collegiate/liable (last visited May 6, 2021); *Claim*, Merriam-Webster https://unabridged.merriam-webster.com/collegiate/claim (last visited May 6, 2021).

[10] MUSIC proposes a similar definition. It defines "liability claim" as a "demand for something due or believed to be due, or the assertion of a right to payment, from one who is bound or obligated according to law or equity." (ECF No. 21 at 17).

the precise nature of the underlying lawsuit. Through the underlying lawsuit, Plaintiff demanded money (damages) owed to him from Donavan Realty according to the law of premises liability.[11] Therefore, the underlying lawsuit was a "liability claim" as set forth in the animal liability exclusion.[12]

Moreover, lawsuits are commonly understood to be "liability claims." For example, the Connecticut Appellate Court referred to causes of action in a dog-bite suit as "strict *liability claims.*" *See Tryon v. Town of N. Branford*, 58 Conn. App. 702, 720 (2000) (emphasis added). The term "liability claim" is also used in Connecticut statutes to refer to litigated actions involving products liability. *See* CONN. GEN. STAT. § 52-577a(a) ("No product *liability claim*, as defined in section 52-572m, shall be brought but within three years from the date when the injury, death or property damage is first sustained[.]" (emphasis added)). Accordingly, it is wholly consistent with Connecticut law to find that the underlying lawsuit was a liability claim. *See New London Cty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 753 (2012) ("[E]ven when undefined, words are not ambiguous if common usage or our case law gives them a single meaning."); *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 545 (2002) ("[A] court will not torture words to import ambiguity, where the ordinary meaning leaves no room for ambiguity[.]" (internal quotation marks omitted)).

---

[11] Only "Donavan Realty Corporation" was named in Count One of the initial complaint. Spencer was not individually named as a defendant.

[12] The Court disagrees with Plaintiff that such a finding is inconsistent with the policy's definition of "suit." The definition of suit does not indicate that a claim is not a suit or that a suit is not a claim. Specifically, the policy provides the following definition of "suit": "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. 'Suit' includes: (a) An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or (b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." (ECF No. 22-1 at 45). Additionally, Plaintiff is incorrect to suggest that adopting a definition of "liability claims" inclusive of suits rewrites the policy to conform to the policy at issue in *Fernandez v. Zurich Am. Ins. Co.*, No. 3:15-cv-00228 (MPS), 2017 WL 923910, at *3 (D. Conn. Mar. 8, 2017) (involving a policy that defined "claim," in part, as a "'Suit' resulting from a 'wrongful act'"). Instead, the Court is merely assigning the phrase "liability claims" its natural and ordinary meaning. *See Aetna Cas. & Sur. Co.*, 240 Conn. at 29–30.

In arguing that a "suit" is not a "claim," Plaintiff principally relies on the Connecticut Supreme Court decision *R.T. Vanderbilt Co., Inc. v. Cont'l Cas. Co.*, 273 Conn. 448 (2005). In *R.T. Vanderbilt*, the court considered whether a potentially responsible party letter ("PRP letter") issued by the United States Environmental Protection Agency constituted a "suit" within the meaning of a comprehensive general liability insurance policy such that the defendant-insurance company's duty to defend the plaintiff-insured was triggered by the PRP letter. *Id*. at 450–51.[13] The court found that the PRP letter was a suit within the meaning of the policy because it was "an attempt to recover a right or claim through legal action[.]" *Id*. at 465 (internal quotation marks omitted). In so finding, the court noted that "the terms suit and claim do not have the same meaning." *Id*. at 469. The court defined "claim" as "a demand for something rightfully or allegedly due or an assertion of one's right to something," which, at least in the context of a personal injury demand letter, falls short of a suit because it has "no *immediate legal effect* and therefore cannot be considered legal action." *Id*. (emphasis in original; internal quotation marks omitted). Thus, the *R.T. Vanderbilt* court appears to suggest that a suit is a claim that has immediate legal effect, *i.e.*,

---

[13] In *R.T. Vanderbilt*, the court determined whether the PRP letter was a suit or a mere claim, not whether a lawsuit was a claim. *See generally R.T. Vanderbilt*, 273 Conn. at 467–69. Plaintiff cites to other cases which similarly considered whether something qualified as a suit or an action rather than a mere claim. *See Riggs v. Standard Fire Ins. Co.*, No. CV054010671S, 2006 WL 416201, at *2 (Conn. Super. Ct. Feb. 7, 2006) (finding that notice of the claim and the insured's intention to sue was not an "action" under the policy); *Alticor Glob. Holdings, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:17-cv-388, 2019 WL 5684047, at *7 (W.D. Mich. Mar. 22, 2019) (finding that a letter accusing the insured of copyright infringement did not trigger the insurer's duty to defend). These cases are not instructive because they do not answer the question presented here, *i.e.*, whether a lawsuit is also a claim. Plaintiff also cites to a Connecticut Superior Court case finding that claims were not suits in the context of a specific contract. *Gianetti v. Greater Bridgeport Individual Prac. Ass'n*, 2005 WL 2078546, at *3 (Conn. Super. Ct. July 21, 2005). Given the context specific nature of the finding, *Gianetti* is not helpful in determining whether the underlying lawsuit in this case is a "liability claim." Lastly, Plaintiff cites to *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.* in which the Supreme Court of California explained that the terms "suit" and "claim" "are not synonymous" and noted that a "claim can be any number of things, none of which rise to the formal level of a suit[.]" 18 Cal. 4th 857, 879 (1998), *as modified* (Sept. 23, 1998) (internal quotation marks and citation omitted). *Foster-Gardner* involved essentially the same issue as was decided in *R.T. Vanderbilt*, specifically, whether a state equivalent PRP letter was a "suit" for purposes of triggering a duty to defend. *Id*. at 860. In deciding that the PRP letter was not a "suit", the court identified differences between "claims" and "suits." *See id*. at 878–79. And while the court held that the PRP letter was not a suit, *id*. at 888, the court did not address whether a lawsuit is a claim, which is the question at issue here. Notably, the *R.T. Vanderbilt* court rejected the *Foster-Gardner* court's conclusion that the PRP letter was not a suit triggering an insurer's duty to defend. *R.T. Vanderbilt*, 273 Conn. at 461–62.

that all suits are claims, but not all claims are suits. Therefore, even applying *R.T. Vanderbilt*'s

definition of "claim" and accepting its distinction between suits and claims, the animal liability

exclusion is still applicable to the underlying lawsuit because it is a suit, which as indicated,

appears to encompass claims. Indeed, the *R.T. Vanderbilt* decision is wholly consistent with the

Court's conclusion that the term "liability claim" is inclusive of lawsuits. *See*, *e.g.*, *id*. at 463 (citing

Webster's New Twentieth Century Dictionary of the English Language, which defined "suit" as

an "action to secure justice in a court of law; attempt to recover a right **or claim** through legal

action" (emphasis added)).

Plaintiff further argues that the MUSIC Policy demonstrates that the terms "suit" and

"claim" have distinct meanings. For example, the Liability Deductible provision indicates that the

deductible amount applies to damages resulting from "any one claim," but that "[t]he terms of the

policy, including those with respect to [MUSIC's] rights and duties with respect to the defense of

suits and the Insured's duties in the event of an occurrence apply irrespective of the application of

the deductible amount." (ECF No. 22-1 at 13). Thus, Plaintiff seems to suggest that the Liability

Deductible provision draws a distinction between MUSIC's responsibilities as to claims and suits.

Plaintiff asserts that this distinction is maintained throughout the policy insofar as it makes separate

reference to claims and suits. (*See*, *e.g.*¸ ECF No. 22-1 at 30 (noting that MUSIC "may, at [its]

discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result"), 35 (similar),

37 (MUSIC "will pay, with respect to any claim [it] investigate[s] or settle[s], or any 'suit' against

an insured [it] defend[s] . . . [a]ll expenses [it] incur[s]."), 39 ("The Limits of Insurance shown in

the Declarations and the rules below fix the most [MUSIC] will pay regardless of the number of .

. . [c]laims made or 'suits' brought[.]"), 40 ("If a claim is made or 'suit' is brought against any

insured, you must . . . see to it that [MUSIC] receive[s] written notice of the claim or 'suit' as soon

as practicable [and] [c]ooperate with [MUSIC] in the investigation or settlement of the claim or defense against the 'suit'[.]")). Plaintiff appears to argue therefore that this "careful separation indicates that [MUSIC's] differing rights and obligations with respect to 'suits' and 'claims' were deliberately and intentionally articulated in the [policy]," *Foster-Gardner, Inc.*, 18 Cal. 4th at 880, and that, accordingly, the animal liability exclusion only applies to claims because it uses the phrase "liability claims" rather than "suits."

Plaintiff also argues that MUSIC could have used broader language in the animal liability exclusion, as it did in other exclusions, if it wanted to exclude coverage for damages arising from both claims and suits. For example, the lethal weapons exclusion provides that the insurance "does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of or resulting from . . . a lethal weapon[.]" (ECF No. 22-1 at 16). Accordingly, Plaintiff suggests that MUSIC should have drafted the animal liability exclusion to say, for example, "this insurance does not apply to bodily injury arising from animals,"[14] and lacking same, the animal liability exclusion, through its use of the term "liability claims," does not exclude coverage for suits.

Despite the policy's use of the terms "claim" and "suit" and the unremarkable observation that different policy language could have been used to draft the exclusion, there is no reasonable definition of "liability claims" not inclusive of suits.[15] Although the term "claim" is used as

---

[14] Plaintiff also cites to cases involving policies that use such language. *See, e.g.*, *Certain Underwriters of Lloyd's London v. Chludzinski*, No. 3:CV-05-0390, 2007 WL 9757781, at *3 (M.D. Pa. Jan. 18, 2007) ("THIS POLICY DOES NOT PROVIDE COVERAGE FOR: BODILY INJURY, PROPERTY DAMAGE OR MEDICAL PAYMENTS TO OTHERS CAUSED BY ANY ANIMAL, WHETHER OWNED OR NOT OWNED BY ANY INSURED." (internal quotation marks omitted)).

[15] The Court's conclusion that there is no reasonable interpretation of "liability claims" favorable to Plaintiff eliminates any need to construe the policy language in favor of coverage. *See Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 796 (2009) ("[A]ny ambiguity [in an insurance policy] is resolved in favor of the insured [and] [t]he court must conclude that the language should be construed in favor of the insured *unless* it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." (emphasis added; internal quotation marks and citations omitted). And "[a]lthough policy exclusions are strictly construed in favor of the insured . . . the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous[.]" (internal quotation marks omitted)).

indicated, the term "liability claim" is not. Plaintiff's close reading of the policy and case law merely attempts to "import ambiguity where the ordinary meaning leaves no room for ambiguity" and betrays the "basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters," or, here, sophisticated counsel. *R.T. Vanderbilt*, 273 Conn. at 462–63 (internal quotation marks and citations omitted). Therefore, the Court finds that the underlying lawsuit was a "liability claim" as referenced in the animal liability exclusion.[16]

### Relating To or Arising From Animals

The animal liability exclusion applies to liability claims "relating to or arising from animals, including the failure to train, supervise, or control animal (s)." (ECF No. 22-1 at 15). Despite the breadth of the exclusion, Plaintiff argues that the underlying lawsuit did not arise from animals insofar as it arose from the insureds' negligence in maintaining the property. MUSIC counters that Plaintiff's characterization of the underlying lawsuit as a premises liability claim does not alter the inescapable conclusion that the Plaintiff's claims arose from or related to a vicious dog attack. The Court agrees with MUSIC.

Connecticut courts and the Second Circuit interpret phrases like "relating to" and "arising from" broadly. For example:

> [I]t is generally understood that for liability for an accident or an injury to be said to "arise out of" [an occurrence or offense], it is sufficient to show only that the accident or injury "was connected with," "had its origins in," "grew out of," "flowed from," or "was incident to" [that occurrence or offense], in order to meet

---

[16] At least one other provision in the policy appears to use the term "claim" when also referring to suits. The "Non-Stacking of Limits Endorsement" provides that "[i]f any coverage form or coverage part or policy issued to you by us or any company affiliated with us apply to the same **claim** for damages, the maximum limit of insurance for liability coverage under all of the coverage forms, coverage parts, or policies shall not exceed the highest applicable limit of insurance available under any one coverage form, coverage part or policy." (ECF No. 22-1 at 24 (emphasis added)). Plaintiff's reading of the policy would lead to the absurd result that policies could not be stacked for claims but could be stacked for lawsuits. Accordingly, this Court cannot accept Plaintiff's argument that there is no overlap between the terms "claim" and "suit."

the requirement that there be a causal relationship between the accident or injury and [that occurrence or offense].

*QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 374 (2001) (internal quotation marks omitted).

Additionally, the Second Circuit explains:

The term "related to" is typically defined more broadly and is not necessarily tied to the concept of a causal connection. Webster's Dictionary defines "related" simply as "connected by reason of an established or discoverable relation." The word "relation," in turn, as "used especially in the phrase 'in relation to,'" is defined as a "connection" to or a "reference" to. Courts have similarly described the term "relating to" as equivalent to the phrases "in connection with" and "associated with," and synonymous with the phrases "with respect to," and "with reference to," and have held such phrases to be broader in scope than the term "arising out of."

*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (internal citations and alterations omitted). Connecticut courts have similarly understood the term "relating to" to have a "broad meaning." *See Viking Constr., Inc. v. 777 Residential, LLC*, 190 Conn. App. 245, 256, *cert. denied*, 333 Conn. 904 (2019) (citing *Brennan v. Brennan Associates*, 293 Conn. 60, 79 n.12 (2009) (acknowledging that the United States Supreme Court defined "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" (internal quotation marks and citation omitted))).

As indicated, Plaintiff asserts that the underlying premises liability claims arose from the insureds' negligent maintenance and control of the property, not animals. Plaintiff relies principally on *Hartford Cas. Ins. Co.* where an insurer refused to defend its insured against a lawsuit arising out of an incident on the insured's premises where a two-year-old was bitten by the insured's dog. 274 Conn. at 459–61. The Connecticut Supreme Court held that the insurer had a duty to defend the insured, in part, because the policy language at issue did "not specify anything more than that the incident causing the damage must arise from the use of the insured premises" and because the underlying complaint "create[d] at least the *possibility* that the underlying action

15

against [the insured fell] within the broad 'use of the premises' coverage in the [policy]." *Id.* at 466. Similarly, Plaintiff asserts that MUSIC had a duty to defend the insureds because Plaintiff alleged in the underlying lawsuit that the insureds were at fault due to their lack of control of the premises rather than their lack of control of the dog. The Court disagrees. Although the *Hartford* court found that the policy possibly provided coverage for the dog-bite incident, the policy at issue did not have an animal liability exclusion. Therefore, nothing in *Hartford* suggests that coverage might exist when a policy contains an animal liability exclusion. The question here is not, as it was in *Hartford*, whether the policy's general liability provisions provide coverage for the dog-bite incident. Rather, the question here is whether the animal liability exclusion precluded coverage for the dog-bite incident because the underlying lawsuit arose from or related to animals.[17]

Here, as discussed above, the animal liability exclusion applies to liability claims *relating to* or *arising from* animals. The complaint in the underlying lawsuit repeatedly alleges that the Plaintiff's injuries were the result of an animal attack. For example, the Plaintiff asserted that "[t]he . . . attack, dog biting and resulting injuries and losses to the minor plaintiff were proximately caused by the [insureds'] carelessness and negligence" insofar as they, *inter alia*, failed to "alleviate dangers [caused] by known dangerous dogs," failed to keep the Plaintiff safe "from dog attacks," and/or failed to "remove the dog" from the premises. (ECF No. 22-3 at 4–5). It would therefore strain reason to the breaking point to conclude that the lawsuit did not "arise from" or "relate to" animals given the broad reading of such language in the courts. *See also Fernandez*,

---

[17] Plaintiff also cites to a Connecticut Supreme Court case which found that "a landlord may be held liable, under a common-law theory of premises liability, for injuries sustained by a tenant after being bitten by a dog owned by a fellow tenant and kept on premises owned by the common landlord, when the landlord knew of the dog's dangerous propensities, but did not have direct care of, or control over, the dog." *Giacalone v. Hous. Auth. of Town of Wallingford*, 306 Conn. 399, 401 (2012). There, in a footnote, the court stated: "[I]t is the landlord's control over the space, not its control over the potential danger, that gives rise to liability." *Id.* at 408 n.4. *Giacalone*, which decided only the issue of common law liability, did not involve any discussion regarding insurance coverage for such liability and nor was the court's use of the phrase "gives rise" made in the context of assessing an insurance contract that included the phrase "arises from." *Giacalone* has no bearing on this case.

No. 3:15-cv-00228 (MPS), 2017 WL 923910, at *4 ("'[W]hether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint, and not the titles assigned to the particular causes of action.'" (citing *Covenant Ins. Co. v. Sloat*, 2003 WL 21299384, at *8 (Conn. Super. Ct. May 23, 2003)); *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 246 (2d Cir. 2002) (noting that, under Connecticut law, "[t]he duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, and the surrounding facts"). There being no reasonable room for argument to the contrary, MUSIC's duty to defend the insureds in the underlying lawsuit was not triggered.

Because the underlying lawsuit was a liability claim that arose from or related to animals, the policy's animal liability exclusion applied to the underlying lawsuit. Consequently, MUSIC did not have a duty to defend the underlying lawsuit nor did MUSIC have a duty to indemnify the insureds. *See DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) ("Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify[.]" (internal quotation marks and citation omitted)). MUSIC is entitled to summary judgment as to its Second Affirmative Defense.

**Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment arguing that MUSIC must pay Plaintiff the full amount of the stipulated judgment because the third amended complaint filed in the underlying lawsuit was covered by the policy or otherwise triggered MUSIC's duty to defend. However, in Plaintiff's reply in support of his motion, Plaintiff concedes that the operative complaint for determining whether MUSIC had a duty to defend the underlying lawsuit is the initial complaint. (ECF No. 26 at 8). As discussed above, the allegations contained in the initial complaint did not

trigger MUSIC's duty to defend.[18] Therefore, MUSIC is not obligated to pay Plaintiff any sum of money pursuant to the stipulated judgment because MUSIC was not obligated to defend the underlying lawsuit or to indemnify the insureds. *See DaCruz*, 268 Conn. at 688. Plaintiff's motion for summary judgment is denied.

**Conclusion**

For the foregoing reasons, MUSIC's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. The Clerk of Court is directed to enter judgment in favor of MUSIC and to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of May 2021.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[18] Because the Court finds that MUSIC's duty to defend was not triggered by the underlying lawsuit, the Court need not consider whether the stipulated judgment in the underlying lawsuit was reasonable. *See Hartford Cas. Ins. Co.*, 274 Conn. at 470 (absent fraud, the insurer must pay the insured the amount of settlement if the insurer breaches its duty to defend).